

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 23, 2004

The Honorable Tim Curry
Tarrant County Criminal District Attorney
Justice Center
401 West Belknap
Fort Worth, Texas 76196-0201

Opinion No. GA-0207

Re: When a surety is entitled to a refund under Government Code section 41.258, which mandates an officer taking a bail bond to require the surety to pay a cost (RQ-0153-GA)

Dear Mr. Curry:

You ask a number of questions about the refund provision in Government Code section 41.258, which mandates that an officer taking a bail bond require the surety to pay a cost, most of which is ultimately deposited in the state treasury in the "felony prosecutor supplement fund" and the "fair defense account."[1]

## I.    Legal Background:  The Government Code Section 41.258 Cost

Chapter 41, subchapter D of the Government Code provides for longevity pay for assistant prosecutors. *See* TEX. GOV'T CODE ANN. §§ 41.252-.253 (Vernon 2004). Section 41.258, enacted by the legislature in 2003,[2] provides a funding mechanism for longevity pay. It creates the "felony prosecutor supplement fund" in the state treasury, *see id.* § 41.258(a), and mandates an officer taking a bail bond to require the surety to pay a cost:

> A court, judge, magistrate, peace officer, or other officer taking a bail bond for an offense other than a misdemeanor punishable by fine only under Chapter 17, Code of Criminal Procedure, shall require the payment of a $15 cost by each surety posting the bail bond, provided the cost does not exceed $30 for all bail bonds posted at that time for an individual and the cost is not required on the posting of a personal or cash bond.

*Id.* § 41.258(b). In some circumstances, a bail bond surety may later be entitled to a refund under section 41.258(f), which provides that "[a] surety paying a cost under Subsection (b) may apply for

---

[1]Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 19, 2003) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Act of May 30, 2003, 78th Leg., R.S., ch. 1083, § 4, 2003 Tex. Gen. Laws 3111, 3112-13.

and is entitled to a refund of the cost not later than the 181st day after the date the state declines to prosecute an individual or the grand jury declines to indict an individual." *Id*. § 41.258(f).

An officer collecting a cost from a bail bond surety under section 41.258 "shall deposit the cost in the county treasury" in accordance with article 103.004 of the Code of Criminal Procedure, *see id*. § 41.258(c), keep separate records of the funds collected, *see id*. § 41.258(d)(1), and file the reports required by article 103.005 of the Code of Criminal Procedure, *see id*. § 41.258(d)(2).[3]

The custodian of the county treasury is required to "(1) keep records of the amount of funds on deposit that are collected under this section" and "(2) send to the comptroller not later than the last day of the month following each calendar quarter the funds collected under this section during the preceding quarter." *Id*. § 41.258(e). A county may retain ten percent of the funds collected under section 41.258 and may also retain all interest accrued on the funds if the custodian "(1) keeps records of the amount of funds on deposit" and "(2) remits the funds to the comptroller as prescribed by Subsection (e)." *Id*. § 41.258(g).

The comptroller is required to deposit one-third of these funds in the fair defense account and two-thirds of the funds in the felony prosecutor supplement fund. *See id*. § 41.258(i). The fair defense account "is an account in the general revenue fund that may be appropriated only to the Task Force on Indigent Defense for the purpose of implementing" Government Code chapter 71, subchapter D. *See id*. § 71.058. The comptroller must use the felony prosecutor supplement fund to pay supplements to counties for prosecutor longevity pay under chapter 41. *See id*. § 41.258(j).[4] A county funds prosecutor longevity pay with money it receives from the comptroller. *See id*. § 41.255.

Prior to these 2003 amendments to chapter 41, this office construed chapter 41 to require a county to provide longevity pay to prosecutors even if the legislature has not appropriated funds to reimburse the county. *See* Tex. Att'y Gen. Op. No. JC-0438 (2001) at 2. According to the legislative history, the legislature intended the 2003 amendments to "make[] plain that counties have no obligation to pay the longevity supplement unless state funds are appropriated for that purpose." HOUSE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 1940, 78th Leg., R.S. (2003) (Committee Report); *see also* SENATE RESEARCH CENTER, SENATE COMM. ON CRIMINAL JUSTICE, BILL ANALYSIS, Tex. H.B. 1940, 78th Leg., R.S. (2003) (Engrossed Version dated May 11, 2003); SENATE RESEARCH CENTER, SENATE COMM. ON CRIMINAL JUSTICE, BILL ANALYSIS, Tex. H.B. 1940, 78th Leg., R.S. (2003) (Committee Report dated May 21, 2003). The legislature established the

---

[3]Article 103.004 requires an officer collecting bail bonds, fines, and other obligations in the name of the state to deposit the money in the county treasury within a certain time frame. *See* TEX. CODE CRIM. PROC. ANN. art. 103.004 (Vernon Supp. 2004). Article 103.005 requires an officer who collects money for the county or the state to report certain information to the commissioners court or district court with jurisdiction in the county. *See id*. art. 103.005(a) (report to commissioners court), (b) (report to district court). The report must state the amount of money collected by the officer, when and from whom the money was collected, the process by which the money was collected, and the disposition of the money. *See id*. art. 103.005(c).

[4]Although the Seventy-eighth Legislature generally abolished dedicated revenues and special accounts in the state treasury, it expressly excepted the felony prosecutor supplement fund. *See* Act of May 30, 2003, 78th Leg., R.S., ch. 1296, §§ 2, 19, 2003 Tex. Gen. Laws 4705, 4705, 4707.

felony prosecutor fund in the state treasury, "with the funds being generated by" the section 41.258 cost imposed on bail bond sureties, "[i]n order to provide funds in today's challenging fiscal environment." HOUSE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 1940, 78th Leg., R.S. (2003) (Committee Report).

## II.    Analysis

You ask six questions about the refund provision, section 41.258(f). *See* TEX. GOV'T CODE ANN. § 41.258(f) (Vernon 2004) ("A surety paying a cost under Subsection (b) may apply for and is entitled to a refund of the cost not later than the 181st day after the date the state declines to prosecute an individual or the grand jury declines to indict an individual."):

> 1.    How does one determine "the date the state declines to prosecute an individual?"
>
> 2.    How does one determine the date when a grand jury "declines to indict?"
>
> 3.    When is interest owed to the surety on the amount refunded?
>
> 4.    To whom should a surety "apply" for a refund: the officer collecting the fee, the county treasurer, or the State Comptroller?
>
> 5.    If an application for a refund of costs previously sent to the State is properly made to the local county treasurer, may the treasurer remit the *net* funds collected each quarter to the state–that is, the costs collected minus any refunds paid during the quarter?
>
> 6.    What kind of entitlement "proof" should a local officer or treasurer require before issuing refunds to sureties?

Request Letter, *supra* note 1, at 2-5.

### A.    Refund Entitlement Date

Your first two questions involve the two grounds for obtaining a refund under section 41.258(f). The section 41.258 cost is paid by a surety posting "a bail bond for an offense other than a misdemeanor punishable by fine only." TEX. GOV'T CODE ANN. § 41.258(b) (Vernon 2004). Under section 41.258(f), a surety "is entitled to and may apply for a refund of the cost not later than the 181st day after the date the state declines to prosecute an individual or the grand jury declines to indict an individual." *Id.* § 41.258(f). You ask how one determines the date the state declines to prosecute or the date the grand jury declines to indict.

Because section 41.258(f) conditions refunds on events in the criminal justice process, *see id.*, we construe it in light of Code of Criminal Procedure provisions governing criminal

prosecutions. *See id.* § 311.011(b) (Vernon 1998) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). "A 'bail bond' is a written undertaking entered into by the defendant and his sureties for the appearance of the principal . . . before some court or magistrate to answer a criminal accusation." TEX. CODE CRIM. PROC. ANN. art. 17.02 (Vernon 1977); *see also id.* art. 17.09(1), (3) (A bail bond surety is liable for the defendant's appearance before the court in any proceeding related to the charges for the proceedings' duration, unless the court finds that the bond is defective, excessive, or insufficient in amount or that the sureties are unacceptable.). A defendant may be released on bail after arrest for an offense before being formally charged.[5] A defendant is formally charged with an offense either by indictment or by information. *See id.* arts. 21.01, 21.20 (Vernon 1989). An "indictment" is "the written statement of a grand jury accusing a person . . . of some act or omission which, by law, is declared to be an offense." *Id.* art. 21.01. "An 'information' is a written statement filed and presented in behalf of the State by the district or county attorney, charging the defendant with an offense which may by law be so prosecuted." *Id.* art. 21.20.

When a complaint is made to a district or county attorney that an offense has been committed in the district or county, the attorney "shall reduce the complaint to writing and cause the same to be signed and sworn to by the complainant, and it shall be duly attested by said attorney." *Id.* art. 2.04 (Vernon 1977). Generally, if the offense is a misdemeanor, the attorney prepares an information and files it with the appropriate court. *See id.* art. 2.05. If the offense is a felony, the attorney must file the complaint with a magistrate of the county. *See id.*; *see also id.* art. 1.05 ("No person shall be held to answer for a felony unless on indictment of a grand jury."). *But see id.* art. 1.141 (A person represented by legal counsel may "waive the right to be accused by indictment of any offense other than a capital felony. On waiver . . . , the accused shall be charged by information."). In addition, an attorney representing the state may go before the grand jury to "inform them of offenses liable to indictment." *Id.* art. 20.03.

In the ordinary case, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests in his discretion.'" *Roise v. State*, 7 S.W.3d 225, 243 (Tex. App.–Austin 1999, pet. ref'd) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *see also Taylor v. Gately*, 870 S.W.2d 204, 204-05 (Tex. App.–Waco 1994, writ dism'd) (holding that mandamus will not issue against prosecuting attorney for failure to institute a criminal case) (noting that "upon the prosecuting attorneys rests the power of determining whether

---

[5]*See, e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 20.22 (Vernon Supp. 2004) ("The fact of a presentment of indictment by a grand jury shall be entered upon the minutes of the court, if the defendant is in custody or under bond, noting briefly the style of the criminal action and the file number of the indictment and the defendant's name. If the defendant is not in custody or under bond at the time of the presentment of indictment, the entry in the minutes of the court relating to said indictment shall be delayed until such time as the capias is served and the defendant is placed in custody or under bond."), 32.01 ("When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.").

prosecution in any given case shall be inaugurated, or, if inaugurated, pushed to a successful conclusion") (citing TEX. CONST. art. V, § 21 interp. commentary (Vernon 1993)).

With respect to indictments, a grand jury "shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person." TEX. CODE CRIM. PROC. ANN. art. 20.09 (Vernon 1977). Under Code of Criminal Procedure article 20.19, the grand jury votes "as to the presentment of an indictment" and, if nine members "concur in finding the bill, the foreman shall make a memorandum . . . with such data as will enable the attorney who represents the State to write the indictment." *Id.* art. 20.19; *see also id.* art. 20.20 (grand jury foreman to deliver indictment to the court).

Based on section 41.258's plain language and these Code of Criminal Procedure provisions initiating criminal prosecution by information or indictment, we conclude that "the date the state declines to prosecute an individual," TEX. GOV'T CODE ANN. § 41.258(f) (Vernon 2004), refers to the date a prosecutor decides not to institute a criminal proceeding against a person, either by deciding not to charge a person by information, by deciding not to present the allegations to the grand jury, or by deciding not to file a felony "complaint with a magistrate of the county." *See* TEX. CODE CRIM. PROC. ANN. arts. 2.04-.05, 20.09 (Vernon 1977). We also conclude that "the date . . . the grand jury declines to indict an individual," TEX. GOV'T CODE ANN. § 41.258(f) (Vernon 2004), refers to the date a grand jury votes not to indict the person. *See* TEX. CODE CRIM. PROC. ANN. art. 20.19 (Vernon 1977) (grand jury vote on presentment of an indictment).

We agree with your conclusion that the former phrase, "the date the state declines to prosecute an individual," does not refer to a date a court dismisses a criminal case pursuant to the prosecutor's motion *after* the defendant has been charged by information or indictment. For example, charges against a defendant may be dismissed upon the prosecutor's motion with the court's approval at any time pursuant to article 32.02 of the Code of Criminal Procedure[6] or after the defendant has successfully completed community supervision as provided by article 42.12.[7] Construing section 41.258 not to permit a refund after a court dismisses a case against a defendant

---

[6]*See id.* art. 32.02 (Vernon 1989) ("The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge.").

[7]*See id.* art. 42.12, §§ 5(c) (Vernon Supp. 2004) ("On expiration of a community supervision period imposed under Subsection (a) of this section, if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him."), 20(a) ("At any time, after the defendant has satisfactorily completed one-third of the original community supervision period or two years of community supervision, whichever is less, the period of community supervision may be reduced or terminated by the judge. Upon the satisfactory fulfillment of the conditions of community supervision, and the expiration of the period of community supervision, the judge, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the community supervision period and shall discharge the defendant. If the judge discharges the defendant under this section, the judge may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty" with certain exceptions.).

who has been formally charged is consistent with the provision's purpose to fund prosecutor longevity pay and indigent defendants' defense, both of which are expenses in prosecuting criminal cases. *See* TEX. GOV'T CODE ANN. § 41.258(i)-(j) (Vernon 2004); *see also supra* pp. 2-3 (summarizing bill analyses). In permitting refunds in cases in which the state declines to prosecute or the grand jury declines to indict, section 41.258(f) appears to contemplate circumstances in which defendants who have posted bail are never formally charged with an offense by indictment or information, which are matters resolved with little state expense. The legislature does not appear to have contemplated refunds in cases where defendants are formally charged, which necessarily involve more state expense. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998) ("In construing a statute, . . . court may consider among other matters the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; . . . [and] (5) consequences of a particular construction . . . ."). Furthermore, construing this phrase to refer only to a prosecutor's initial decision to decline to prosecute is consistent with the second refund ground, a grand jury's decision not to indict, which also happens at an early point in a prosecution. *See id.* § 311.021(2)-(3) ("In enacting a statute, it is presumed that: . . . the entire statute is intended to be effective [and] a just and reasonable result is intended.").

With respect to the latter phrase, "the date . . . the grand jury declines to indict an individual," you note that grand jury proceedings are secret, *see* TEX. CODE CRIM. PROC. ANN. art. 20.02 (Vernon 1977), and that the Code of Criminal Procedure does not require a grand jury to "issue any instrument when a matter is concluded and voted upon without an indictment being issued." Request Letter, *supra* note 1, at 3. However, you state that it is the practice in your county "to terminate a previously filed case whenever a grand jury considers a matter, takes a vote, and fails to indict." *Id.* The district attorney's office sends a letter informing the court clerk and other relevant parties about the "grand jury's 'no-bill.'" *Id.*[8] We agree with your assessment that a bail bond surety is entitled to a refund under section 41.258 when a prosecutor terminates a filed case because the grand jury failed to indict. *See id.* Of course, the surety would be entitled to apply for a refund after the date the grand jury declines to indict an individual even if the prosecutor does not send such a letter.

You are concerned that sometimes a defendant whose prosecution has been terminated due to the "grand jury's 'no-bill'" may later be indicted by the same grand jury or by a different grand jury. *See id. See generally Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996) ("A Grand Jury's no-bill is merely a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged."). If a defendant and the bail bond surety are released from the first bond after a grand jury "no-bill" and the defendant is indicted at a later time, presumably the defendant will be required to post a new bail bond. Unless the new bond is a personal or cash bond, the officer taking the new bond would collect a section 41.258 cost.

---

[8]In addition, we note that a defendant could learn that a grand jury has declined to indict based on grand jury information. Article 20.02(d) of the Code of Criminal Procedure provides that a defendant may petition a court to order disclosure of secret grand jury information upon showing "particularized need." *Id.* art. 20.02(d) (Vernon 1977) ("The defendant may petition a court to order the disclosure of information otherwise made secret by this article or the disclosure of a recording or typewritten transcription under Article 20.012 as a matter preliminary to or in connection with a judicial proceeding. The court may order disclosure of the information, recording, or transcription on a showing by the defendant of a particularized need.").

B.    **Refund Proof**

In a related question, you ask what kind of proof a bail bond surety should be required to submit to obtain a refund. *See* Request Letter, *supra* note 1, at 5 (question 6). In particular, you are concerned that no particular legal instrument "documents a prosecutor's failure to prosecute or a grand jury's failure to indict." *Id.*

Section 41.258 is silent on this issue. By implication, section 41.258 requires the entity or officer charged with processing refund applications to grant a timely application based on any documents that establish that (i) the bail bond surety paid a section 41.258 cost posting bond for a defendant and (ii) that "the state decline[d] to prosecute" or that "the grand jury decline[d] to indict" the defendant. *See* TEX. GOV'T CODE ANN. § 41.258(b), (f) (Vernon 2004). A number of documents could establish these facts. You mention "documentation from the applicable prosecutor that he has declined prosecution as of a particular date or that a grand jury has declined to indict as of a particular date." Request Letter, *supra* note 1, at 4. A bail bond surety might also be able to demonstrate that the prosecutor declined to prosecute or that the grand jury declined to indict based on a court order or docket entry regarding the case's disposition.

C.    **Procedural Matters: Refund Application Processing and Refund Accounting**

You ask two questions about how refund applications should be administered and paid. You ask, "To whom should a surety 'apply' for a refund: the officer collecting the fee, the county treasurer, or the State Comptroller?" *Id.* at 4 (question 4). You point out that by the time a bail bond surety seeks a refund, the surety's payment may have been deposited in the county treasury or transferred from the county treasury to the state treasury. *See* TEX. GOV'T CODE ANN. § 41.258(c), (e)(2), (i) (Vernon 2004). Assuming that the refund will be paid by the county, you also ask whether a county treasurer may "remit [to the comptroller] the *net* funds collected each quarter to the state—that is, the costs collected minus any refunds paid during the quarter?" Request Letter, *supra* note 1, at 4 (question 5). You state it would be unjust to "plac[e] the entire burden of refunds on local counties who will only benefit from a minority portion of funds which are collected for statewide distribution, and whose surplus, if any, will eventually be deposited in the State's general fund." *Id.* at 5.

Section 41.258 does not specify to whom a bail bond surety may submit a refund application and does not specify whether the state or the county pays a refund. Given that ninety percent of section 41.258 costs are ultimately deposited in the state treasury and that the comptroller has general authority over state and county accounting, the comptroller is the proper official to determine whether section 41.258 refund applications should be processed at the state or county level and whether refunds should be paid by the state or the county. *See* TEX. GOV'T CODE ANN. § 403.011(a)(2)-(3), (7) (Vernon Supp. 2004) (authorizing the comptroller to "adopt regulations the comptroller considers essential to the speedy and proper assessment and collection of state revenues"; "supervise, as the sole accounting officer of the state, the state's fiscal concerns and manage those concerns as required by law"; "prescribe the mode and manner of keeping and stating of accounts of persons collecting state revenue"); TEX. LOC. GOV'T CODE ANN. § 112.003(a) (Vernon Supp. 2004) ("The comptroller of public accounts shall prescribe and prepare the forms to

be used by county officials in the collection of county revenue, funds, fees, and other money and in the disbursement of funds. The comptroller shall prescribe the manner of keeping and stating the accounts of the officials."). Of course, in the absence of direction from the comptroller, counties may accept refund applications and provide refunds.

Assuming that the counties pay refunds, section 41.258 is silent with respect to how a county should account for refunds and whether refunds may be deducted from amounts sent to the comptroller under section 41.258(e)(2). We believe it is reasonable to construe section 41.258 to require refunds to come from costs collected under section 41.258(b) rather than other funds in the county treasury. The legislative history indicates that the purpose of the "felony prosecutor supplement fund" and the section 41.258 funding source is to relieve counties of the burden of paying for attorney salary supplements. *See supra* pp. 2-3 (summarizing bill analyses). It would not be consistent with legislative intent to require counties to pay the entire cost of providing refunds from county funds. Thus, we agree that the legislature did not intend to require counties to shoulder the entire cost of providing refunds. *See* TEX. GOV'T CODE ANN. §§ 311.021(2)-(3) (Vernon 1998) ("In enacting a statute, it is presumed that: . . . the entire statute is intended to be effective [and] a just and reasonable result is intended."), 311.023 ("In construing a statute, . . . court may consider among other matters the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; . . . [and] (5) consequences of a particular construction . . . ."). However, section 41.258 does not expressly provide that a county may deduct refunds from amounts remitted to the comptroller. *See* TEX. GOV'T CODE ANN. § 41.258(e), (g) (Vernon 2004). It is for the comptroller to determine as an accounting matter whether counties should deduct refunds from amounts sent to the comptroller or whether the comptroller should reimburse counties for refunds. *See id.* § 403.011(a)(2)-(3), (7) (Vernon Supp. 2004), TEX. LOC. GOV'T CODE ANN. § 112.003(a) (Vernon Supp. 2004).

### D.    Interest on Refunds

Finally, you ask, "When is interest owed to the surety on the amount refunded?" Request Letter, *supra* note 1, at 3 (question 3). This question assumes that a bail bond surety who is entitled to a refund under section 41.258(f) is entitled to interest. Section 41.258 requires officials taking bail bonds to collect a cost on the state's behalf. *See* TEX. GOV'T CODE ANN. § 41.258(g) (Vernon 2004) (requiring the county to remit ninety percent of costs collected to the state). With certain limited exceptions not relevant here, the state is not liable for interest unless expressly required to pay interest by statute or contract. *See State v. Hale,* 146 S.W.2d 731, 738 (Tex. 1941) (noting general rule that the State is not liable for interest upon claims or judgments against it, in the absence of an agreement on the part of the State to pay interest), *Walker v. State,* 103 S.W.2d 404, 407 (Tex. Civ. App.–Waco 1937, no writ) ("It is a very well-established rule that a State is not liable for interest in the absence of a statute or express contract providing for the payment thereof. The act authorizing the bringing of this suit makes no provision for the recovering of interest. We know of no statute that grants general authority to recover interest from the State."). Section 41.258 does not provide that a bail bond surety is entitled to interest on a refund. *See* TEX. GOV'T CODE ANN. § 41.258 (Vernon 2004). Accordingly, we conclude that a bail bond surety who applies for a cost refund under section 41.258 is not entitled to interest.

## S U M M A R Y

Government Code section 41.258(b) requires an officer taking a bail bond to collect a cost from the surety. The officer deposits the money in the county treasury and the county later sends most of the money to the comptroller, who must deposit it in the fair defense account, which may be used only by the Task Force on Indigent Defense to implement Government Code chapter 71, subchapter D, and the felony prosecutor supplement fund, which is used to pay longevity pay to prosecutors. Pursuant to section 41.258(f), a bail bond surety is entitled to a refund of a cost paid under section 41.258(b) as of the date the prosecutor decides not to institute a criminal proceeding against the defendant or the date a grand jury votes not to indict the defendant.

Given that most of section 41.258 costs are ultimately deposited in the state treasury and that the comptroller has general authority over state and county accounting, the comptroller is the proper official to determine whether section 41.258 refund applications should be processed at the state or county level and whether refunds should be paid by the state or the county. In the absence of direction from the comptroller, counties may accept refund applications and provide refunds.

If a county pays a refund, it is reasonable to construe section 41.258 to require refunds to come from costs collected under section 41.258(b) rather than other funds in the county treasury. However, it is for the comptroller to determine as an accounting matter whether counties should deduct refunds from amounts sent to the comptroller or whether the comptroller should reimburse counties for refunds. A bail bond surety who applies for a cost refund under section 41.258(b) is not entitled to interest.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee