Opinion issued March 5, 2009














In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00098-CR

____________


JESUS GARCIA DELGADO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 1111369






MEMORANDUM OPINION

 A jury found appellant, Jesus Garcia Delgado, guilty of the offense of
aggravated robbery, (1) and the trial court assessed his punishment at confinement for
twenty-five years. In two points of error, appellant contends that the evidence is
legally and factually insufficient to support his conviction and that the trial court
erred in denying his motion to suppress his videotaped statement.

 We affirm.

Factual Background The complainant, Harpreet Singh, testified that on March 19, 2007, at
approximately 9:00 a.m., he was working at the Sun Mart convenience store. 
Appellant, accompanied by a light-skinned, Hispanic woman, walked into the Sun
Mart and told the complainant that he wanted some Marlboro Red Lights. The
complainant placed the cigarettes on the counter, and appellant and the woman went
to the back of the store and picked up some beer, hair dye, and other items. Appellant
then returned to the counter with everything he had picked up, placed the items on the
counter, and gave the complainant a credit card. Because the amount of the purchase
exceeded $20, the complainant asked appellant for identification. Appellant provided
the complainant with a driver's license, but, noticing that the picture on the license
did not resemble appellant, the complainant placed the driver's license and credit card
back on the counter and refused to charge the credit card. 

 Appellant then began "cursing . . . and telling [the complainant] that [he would]
be in trouble if" he did not charge the credit card. The complainant again refused to
charge the credit card, and appellant "pulled up his shirt, [revealing] . . . the gun." 
The weapon appeared to be a black, semiautomatic firearm. Appellant grabbed the
license, the credit card, and the cigarettes off the counter and pulled the firearm from
his waistband. With his finger on the trigger, appellant said, "You see this?" When
the complainant backed away, appellant said, "Yeah, that's right, you better back off." 
As appellant held the firearm by his waist, with his finger on the trigger, the woman
gathered the beer, hair dye, and other items. Then, appellant and the woman went to
the exit and drove away in a gold-colored, Ford sports utility vehicle ("SUV"). 

 The complainant called for emergency assistance, and, while on the telephone,
he went outside to see the SUV and gave the SUV's license plate number to the
operator. Later, when police officers arrived at the Sun Mart, the complainant
described appellant to the police as "skinny" and "bald," with a black tattoo on the
side of his head shaped like an "Astros star." On cross-examination, the complainant
conceded that although the Sun Mart had a digital video recorder ("DVR")
surveillance system, the video of that morning's events had been erased. 

 Houston Police Department ("HPD") Officer R. Brunson testified that on
March 19, 2007, she was dispatched to the Sun Mart, and she interviewed the
complainant, who described appellant, the woman, and another male who had been
waiting in the SUV. Additionally, the complainant described the make, model, and
license plate number of the SUV that appellant drove away in. 

 HPD Senior Detective E. Castaneda testified that he subsequently contacted the
complainant to verify the information in Officer Brunson's report and to retrieve the
surveillance video several times. The complainant told Castaneda that the video
could not be viewed, but his cousin "was going to fix it." However, Castaneda never
viewed the video. Based on the complainant's description of the SUV, Castaneda
located appellant and the light-skinned, Hispanic woman and had them arrested. 
Castaneda prepared a videotaped lineup with appellant and a photographic array with
a photograph of the woman. When Castaneda showed the complainant the
photographic array, the complainant identified the woman as the light-skinned,
Hispanic woman he had seen with appellant on the morning of March 19, 2007. On
cross-examination, Castaneda conceded that the complainant did not identify
appellant in the videotaped lineup as the man who had robbed him. 

 HPD Detective S. Guerra testified that he interviewed appellant. At the
beginning of the interview, Guerra advised appellant of his legal rights and asked
appellant if he understood his rights. (2) Appellant responded that he did. Although
appellant did not initially agree to waive his rights, when Guerra closed his folder,
appellant "changed his mind" and said "No, no, no. I want to talk, I want to talk." 
Guerra and appellant then "proceeded to speak about the incident." Guerra showed
appellant the photographic array containing the picture of the light-skinned, Hispanic
woman, and appellant identified her as his girlfriend. Appellant acknowledged that
they had planned to steal beer from the Sun Mart, but he denied that he had a firearm
with him. However, Detective Guerra noticed that during the interview, appellant
"kept looking down at his waistband" every time Guerra asked him about the firearm.

Sufficiency of the Evidence

 In his first point of error, appellant argues that the evidence is legally and
factually insufficient to support his conviction because the State did not prove beyond
a reasonable doubt that appellant "used or exhibited a deadly weapon" during the
commission of the offense.

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). In doing so, we
give deference to the responsibility of the fact-finder to fairly resolve conflicts in
testimony, to weigh the evidence, and to draw reasonable inferences from the facts. 
Id. We must resolve any inconsistencies in the evidence in favor of the verdict. 
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). However, our duty
requires us to "ensure that the evidence presented actually supports a conclusion that
the defendant committed" the criminal offense of which he is accused. Williams, 235
S.W.3d at 750.

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury's determinations. Marshall, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006). Although we should always be "mindful" that a jury is in
the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is "the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d at 416-17. Thus,
when an appellate court is "able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial." Id. at 417.

 A person commits the offense of robbery if, in the course of committing theft
and with the intent to obtain or maintain control of property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Penal Code Ann. § 29.02 (Vernon 2003). The offense of robbery is elevated
to aggravated robbery if the person commits robbery and uses or exhibits a deadly
weapon. Id. § 29.03(a)(2) (Vernon 2003). A firearm is considered a deadly weapon. 
Id. § 1.07(a)(17)(A) (Vernon Supp. 2008).

 In support of his argument that the evidence is legally insufficient to support
his conviction, appellant asserts that the complainant is the only witness who testified
that appellant had a handgun, the State did not produce the Sun Mart's "surveillance
system [which] could have provided the best evidence of whether [appellant]
exhibited a handgun," and the State did not prove that appellant threatened the
complainant or placed him in fear of imminent bodily injury or death.

 Viewing the evidence in the light most favorable to the verdict, the jury could
have believed the complainant's testimony that appellant used a firearm in the
commission of the offense even in the absence of the surveillance video. 
Additionally, although appellant asserts that the complainant "never testified that
[appellant] threatened him or that he feared that [appellant] would harm or kill him,"
the complainant testified that appellant told him there would be trouble if the
complainant did not charge the card and appellant then pulled a firearm from his
waist with his finger on the trigger. In fact, contrary to appellant's assertion, the
complainant specifically testified that he was afraid that appellant might "shoot or kill
[him]." 

 From this evidence, a rational trier of fact could have found that appellant used
a firearm and threatened the complainant or placed him in fear of imminent bodily
injury or death. Accordingly, we hold that the evidence is legally sufficient to
support appellant's conviction for the offense of aggravated robbery.

 Appellant argues that the evidence is factually insufficient to support his
conviction because the complainant is the only witness who testified that appellant
used or exhibited a firearm, appellant denied that he used a firearm when questioned
by Officer Guerra, police officers did not find a firearm in appellant's possession
when they arrested him, the complainant "never testified that [appellant] threatened
him or that he felt in fear of imminent bodily injury or death" because of appellant's
actions, and the complainant failed to identify appellant in "a videotaped lineup
shown to him a few days after the robbery."

 Viewing the evidence in a neutral light, the complainant was the only witness
who testified that appellant used a firearm. Additionally, police officers did not
recover a firearm when they arrested appellant, and the surveillance video from the
Sun Mart was not extracted from the DVR system before it had been erased.
Furthermore, appellant admitted that he committed a theft during his interview with
Guerra, but "he consistently said he never had and never showed a gun." Also, the
complainant was unable to identify appellant in the videotaped lineup days after the
incident. 

 Although appellant asserts that the complainant never testified that appellant
threatened him and that he felt fear of imminent bodily injury or death, the evidence
contradicts this assertion. During his testimony at trial, the complainant testified
about appellant's actions when the complainant refused to charge the credit card:

 [Complainant]: He was cursing so much and telling me to go ahead
and charge it, otherwise that I'll be in trouble if I
don't do it.

 

 [The State]: What exactly--was it name calling or just cursing?

 

 [Complainant]: Yeah. He called me a bitch, mother-fucker, go
ahead and do it. If you don't do it, you're going to
see something. I said: Sir, I can't do it. And he was
like--he backed off, he pulled up his shirt, and he
showed me the gun, he said: Yeah, you see this? 
That's when I backed off.


 . . . .

 

 [The State]: Did you think it was a real gun?

 

 [Complainant]: Yes.

 

 [The State]: Were you afraid if you didn't do what he wanted you
to do or he went further anymore that he might shoot
or kill you?

 

 [Complainant]: Yes.

In his testimony, the complainant clearly stated that appellant threatened him with a
firearm and that he was afraid of being shot. 

 In regard to the fact that the complainant did not identify appellant in the
videotaped lineup, appellant admitted to Detective Guerra that he had in fact been at
the Sun Mart with his girlfriend, and the complainant did identify, in the photographic
array, the light-skinned, Hispanic woman, who appellant had identified as his
girlfriend. Additionally, the complainant provided police officers with a description
of appellant, in which he stated that appellant had a star tattooed on his head, and
appellant has a star tattooed on his head. Finally, at trial, the complainant testified
that he recognized appellant as the man who robbed him.

 Here, the complainant testified that appellant exhibited and used a firearm to
commit theft at the Sun Mart, appellant threatened him, and he felt in fear of
imminent bodily harm or death. The complainant's testimony was consistent with all
of the evidence introduced at trial. We conclude that the evidence is not so obviously
weak as to make the verdict clearly wrong and manifestly unjust, nor is the proof of
guilt against the great weight and preponderance of the evidence. Accordingly, we
hold that the evidence is factually sufficient to support appellant's conviction for the
offense of aggravated robbery. 

 We overrule appellant's first point of error.

Videotaped Statement

 In his second point of error, appellant argues that the trial court erred in not
excluding appellant's videotaped statement because Detective Guerra did not advise
appellant of his legal rights a second time after appellant initially refused to waive
those rights. 

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2003). In reviewing a ruling
on a question of the application of law to facts, we review the evidence in the light
most favorable to the trial court's ruling. Montanez v. State, 195 S.W.3d 101, 106
(Tex. Crim. App. 2006). At a suppression hearing, the trial court is the sole and
exclusive trier of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at
281. Accordingly, the trial court may choose to believe or to disbelieve all or any
part of the witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000). In reviewing a trial court's ruling, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather than
evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996). 

 Appellant asserts that when Detective Guerra initially told him of his legal
rights and asked him if he wanted to waive his rights and talk about the Sun Mart
case, appellant said "no." Appellant argues that at that point the interview stopped
and everything adduced after that point should have been excluded from evidence
because Guerra continued the interview without telling appellant his legal rights
again. The State asserts that although appellant initially said "no" when asked if he
wanted to waive his legal rights, appellant had misunderstood what was being asked
of him and, when Detective Guerra clarified his question, appellant then agreed to
give a statement. 

 The videotape of the interview confirms that Detective Guerra informed
appellant of his legal rights. After appellant said that he understood his legal rights,
the following exchange took place:

 [Guerra]: We have a report here that we wish to discuss with
you.


 [Appellant]: Yes sir.


 [Guerra]: But before we do that we have to read you your
rights . . . that way we can fill you in on what's
going on. Is that okay?

 

 [Appellant]: Yes sir.


 [Guerra]: Do you waive your rights?


 [Appellant]: No.


 [Guerra]: So you don't want me to tell you anything?


 [Appellant]: Yes, yes, I want you to.


 [Guerra]: Okay, so you waive your rights.


 [Appellant]: Yes.

Guerra then continued the interview.

 A defendant's oral statement may not be used in evidence against him unless,
on an electronic recording, the defendant is informed of certain rights and chooses to
waive those rights. Tex. Code Crim. Proc. Ann. art. 38.22 § 3 (Vernon 2005). One
of the rights which the defendant must be read and voluntarily waive is the right "to
remain silent and not make any statement at all." Id. art. 38.22 §§ 2(a)(1), 3(a)(2). 
Once a suspect "indicates in any manner, at any time prior to or during questioning,
that he wishes to remain silent, the interrogation must cease." Ramos v. State, 245
S.W.3d 410, 418 (Tex. Crim. App. 2008) (quoting Miranda v. Arizona, 384 U.S. 436, 
444, 86 S. Ct. 1602, 1612 (1966)). However, a suspect must unambiguously invoke
his rights, otherwise an interrogating officer "need not stop his questioning." Id.
(quoting Dowthitt v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996)). When a
suspect's invocation of his rights is ambiguous, an interrogating officer is permitted
to either continue questioning regarding the offense or clarify whether the suspect
wishes to waive or invoke his rights. Marshall v. State, 210 S.W.3d 618, 628 (Tex.
Crim. App. 2006).

 Here, appellant confirmed that he understood his legal rights, but initially said
that he did not waive them. He then stated that he wanted to discuss the case. These
conflicting statements created a clear ambiguity in regard to the invocation of his
legal rights. Therefore, Detective Guerra was permitted to clarify whether appellant
wished to waive or invoke his legal rights. See id. Upon clarification, appellant
agreed to waive his legal rights.

 Accordingly, we hold that the trial court did not err in denying appellant's
motion to suppress his videotaped statement.

 We overrule appellant's second point of error.


Conclusion

 We affirm the judgment of the trial court. 



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Bland, and Hudson. (3)


Do not publish. Tex. R. App. P. 47.2(b). 


1. See Tex. Penal Code Ann. § 29.03 (Vernon 2003).
2. See Tex. Code Crim. Proc. Ann. art. 38.22 § 3 (Vernon 2005).
3. The Honorable J. Harvey Hudson, retired justice, Fourteenth Court of Appeals,
Houston, Texas, participating by assignment.