

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00497-CR

ANTHONY ZANE EATMAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                           STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Anthony Zane Eatman of the offense of possession of a controlled substance (methamphetamine) in an amount equal to or greater than four grams but less than two hundred grams and assessed his punishment at twenty-five years' confinement. The trial court sentenced him accordingly. In one point, Appellant contends that the trial court erred by denying

---

[1]*See* Tex. R. App. P. 47.4.

his motion to suppress. Because we hold that the trial court did not err by denying Appellant's motion to suppress, we affirm the trial court's judgment.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[3]

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.[4] But this general rule is inapplicable when the parties consensually relitigated the suppression issue during trial on the merits.[5] If the State raised the issue at trial either without objection or with subsequent participation in the inquiry by the

---

[2]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[4]*See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996).

[5]*Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 809.

defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review.[6]

The Fourth Amendment protects against unreasonable searches and seizures by government officials.[7] To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.[8] A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.[9] Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.[10]

Whether a search is reasonable is a question of law that we review de novo.[11] Reasonableness is measured by examining the totality of the circumstances.[12] It requires a balancing of the public interest and the individual's

---

[6]*Rachal*, 917 S.W.2d at 809.

[7]U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

[8]*Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009).

[9]*Amador*, 221 S.W.3d at 672.

[10]*Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

[11]*Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

[12]*Id.* at 63.

right to be free from arbitrary detentions and intrusions.[13]  A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement.[14]

Similarly, under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions."[15]  A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in the code of criminal procedure.[16]  An officer has probable cause to stop and arrest a driver if he observes the driver commit a traffic offense.[17]  Further, any peace officer may make a warrantless arrest of any person found violating the "Rules of the Road,"

---

[13]*Id.*

[14]*McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.).

[15]*Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres*, 182 S.W.3d at 901.

[16]*Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2005 & Supp. 2011).

[17]*State v. Gray*, 158 S.W.3d 465, 467, 469–70 (Tex. Crim. App. 2005); *see State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd).

that is, subtitle C of title 7 of the transportation code.[18]   Finally, incident to a lawful arrest, the police may lawfully search the arrestee's person.[19]

In his motion to suppress, Appellant requested the trial court to "[s]uppress all the evidence seized as a result of the stop and subsequent search" of his person.  He contended that no probable cause existed for the arrest and that the stop was not supported by reasonable suspicion.  He further contended that any and all evidence seized or statements made resulted from "an illegal stop, illegal arrest, illegal detention and an illegal search."  He further alleged that the "stop, search, detention, and subsequent arrest . . . were pretextual and without a sufficient factual basis."

When presenting Appellant's motion, defense counsel stated that the issues were "the initial stop by the police officer, the contact made with the police officer to go further and make the subsequent arrest."  At the hearing, Officer John Romer testified that he saw Appellant, whom he identified at trial, drive a mid-sized SUV into an intersection without stopping at the stop sign.  The SUV completely crossed the white stop line.  Romer then activated his overhead emergency lights to conduct a traffic stop.  Appellant remained stopped in the intersection.  After eliciting this testimony, the prosecutor stated, "Your Honor,

---

[18]Tex. Transp. Code Ann. § 543.001 (West 2011).

[19]*See Gray*, 158 S.W.3d at 470; *Buitron v. State*, No. 04-99-00343-CR, 2000 WL 84420, at *1 (Tex. App.—San Antonio Jan. 26, 2000, no pet.) (not designated for publication) (upholding search incident to arrest after Buitron ran stop sign).

5

because it's the State's understanding that the issue is the stop and only the stop for this motion to suppress, we will pass the witness at this point because we believe we've covered his issue."  On cross-examination in the suppression hearing, defense counsel questioned Romer about a possible 911 call or some other contact with a tipster.  The trial court denied the motion to suppress.

At trial, Romer was the State's first witness, and the prosecutor revisited the circumstances of the stop, arrest, and search.  Romer testified that when he and his partner stopped Appellant, Appellant seemed extremely nervous and very fidgety; was sweating profusely and acting very jittery; and was moving around "in a state of almost panic."  Romer testified that Appellant's level of anxiety was unusual for someone who had committed only a traffic violation.

Romer testified that he watched Appellant from the passenger side of the stopped SUV while his partner conducted a records check.  Romer testified that Appellant kept looking around and reaching down toward his pockets, so Romer asked him to get out of the car so he could perform a patdown search for weapons.  Appellant got out of the car but was noncompliant during the patdown search.  He kept trying to reach into his pockets with his hands despite Romer's verbal and physical commands to stay in position.  Romer testified that Appellant also "just kept rambling" and "just acted very, very strange."  Romer finally arrested and handcuffed Appellant.  Then Romer performed a search incident to arrest.  In the right front pocket of Appellant's jeans, Romer found what appeared to be marijuana and a methamphetamine pipe.  In the left front pocket of

6

Appellant's jeans, Romer found three little bags of what was later determined to be methamphetamine.

On cross-examination at trial, Romer testified that five to ten minutes after Appellant handed him his identification, he arrested Appellant for running the stop sign. About thirty or forty-five minutes later, Appellant was transported to jail.

On appeal, Appellant contends that the search of his person was not a permissible search incident to arrest and that the evidence seized should therefore be suppressed. Romer testified that he saw Appellant run the stop sign and drive the SUV completely over the white line. Thus, Romer observed Appellant commit a traffic violation.[20] Romer therefore had probable cause and statutory authority to arrest Appellant.[21] Because he had legal authority to arrest Appellant and did arrest Appellant, Romer also had legal authority to conduct a search of Appellant's person incident to arrest.[22] We therefore hold that the trial court did not err by denying Appellant's motion to suppress and overrule his sole point.

---

[20] *See* Tex. Transp. Code Ann. § 544.010(a), (c) (West 2011).

[21] *See id.* § 543.001; *Gray*, 158 S.W.3d at 467, 469–70; *Ballman*, 157 S.W.3d at 70.

[22] *See Gray*, 158 S.W.3d at 470; *Buitron*, 2000 WL 84420, at *1.

Having overruled Appellant's sole point, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 8, 2011